IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Raenelle Joyner, ) | |
| ) | Civil Action No.2:15-cv-411-PMD-MGB |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Lowcountry Credit, Inc.; TruAuto, Inc.; ) | |
| McElveen Buick-GMC, Inc.; McElveen ) | |
| Insurance and Financial Planning, LLC; ) | |
| and Economy Cars, LLC, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court upon Defendants' Motion to Compel Arbitration and Stay Proceedings Pending Conclusion of Arbitration (Dkt. No. 7).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2) D.S.C., this matter has been referred to a United States Magistrate Judge for consideration.

**DISCUSSION**

In her Amended Complaint, Plaintiff alleges that she was hired by Defendants on January 21, 2008, to work at Defendant Lowcountry Credit, Inc. as an Accounts Payable Clerk and that she was promoted to Collections Manager in November of 2010. (Am. Compl. ¶¶ 13-14.)[1] Plaintiff asserts she "performed her job duties at defendants . . . in an above-average fashion and otherwise maintained an excellent employment record." (Id. ¶ 17.) According to Plaintiff, in July of 2013, she began to experience various health problems and was advised she needed surgery; Plaintiff alleges she told Todd Smith, owner or part owner of Defendants, and Tonya Ambrose, Comptroller of two Defendants, of "her health issues and her need to have surgery" in October of 2013. (Id. ¶¶ 16, 19.) Plaintiff alleges she went out on medical leave on October 28, 2013, and underwent spinal fusion

---

[1] Plaintiff alleges that Defendants "are closely related and exist as a single entity or joint or integrated employer." (Am. Compl. ¶ 12.)

surgery on October 30, 2013. (Id. ¶ 21.) Plaintiff asserts that when she returned to work in March of 2014, Smith and Ambrose "advised" Plaintiff "that they were cutting" her pay because when Plaintiff was out on medical leave, another employee had to perform Plaintiff's job, and that employee was unable to perform her own duties, resulting "in increased delinquencies." (Id. ¶¶ 22-23.) Plaintiff alleges that in addition to reducing her hourly wage, her bonus percentage was decreased from 25% to 10%. (Id. ¶¶ 24-25.)

Plaintiff alleges that on or about April 30, 2014, she prepared a handwritten letter and delivered it to Kim Caddell, Office Manager; the letter stated, *inter alia*, "I believe under the law of the FMLA and ADA I was illegally reduced in salary. . . ." (Id. ¶¶ 20, 26.) According to Plaintiff, on May 2, 2014, she was instructed to be at Smith's office; when she arrived, Smith and Ambrose were present. (Id. ¶ 28.) Plaintiff alleges Smith told her "that he was 'really upset' about plaintiff's letter," "that he no longer trusted plaintiff," and that he "did not know what plaintiff's next step would be." (Id.) Plaintiff asserts that Smith "then terminated plaintiff and told plaintiff that they should part ways now while they were still friends." (Id. ¶ 29.)

Plaintiff asserts that Defendants actions violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. (See generally Am. Compl.) She also alleges a claim for wrongful termination in violation of public policy. (See Am. Compl. ¶¶ 64-68.)

In their Motion to Compel Arbitration and Stay Proceedings Pending Conclusion of Arbitration, Defendants assert that Plaintiff signed an "Agreement to Arbitrate" (hereinafter "Agreement") on her hire date of January 21, 2008. (Dkt. No. 7 at 2-3.) Defendants attached that Agreement to their motion; the Agreement provides, *inter alia*,

> The parties acknowledge that differences may arise between the Company and the Employee arising out of or relating to the Employee's employment with the Company or the termination of that employment.
> The parties agree that resolution of any differences in the courts is rarely time or cost-effective for either party.

> The Company and the Employee accordingly wish to arbitrate claims in order to establish and gain the benefits of a speedy, impartial and cost-effective dispute resolution process.
> . . .
> 1. <u>Agreement to Arbitrate</u>. Except as otherwise provided in this agreement, the Company and the Employee consent to the resolution by arbitration of all claims or controversies for which a court otherwise would be authorized by law to grant relief, arising out of, relating to, or associated with the Employee's employment with the Company, or its termination, which the Company may have against the Employee or that the Employee may have against the Company or against its officers, directors, employees or agents in their capacity as such or otherwise. The termination claims covered by this agreement include, but are not limited to: claims for wages or other compensation due; claims for breach of contract or covenant, express or implied; tort claims, claims for discrimination, including but not limited to discrimination based on race, sex, religion, national origin, age, marital status, sexual orientation, disability or medical condition; claims for benefits, except as excluded in the following paragraph; and claims for violation of any federal, state or other governmental constitution, statute, ordinance or regulation.

(Dkt. No. 7-1 at 1-2 of 3.) The Agreement further provides that it "shall survive the employee relationship between the Company and the Employee and shall apply to any termination claim whether it arises or is asserted during or after termination of the Employee's employment with the Company." (<u>Id</u>. at 3.)

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*., reflects "a liberal federal policy of favoring arbitration agreements." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983). "The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" <u>Adkins v. Labor Ready, Inc.</u>, 303 F.3d 496, 500 (4th Cir. 2002) (quoting 9 U.S.C. § 3). As the Fourth Circuit stated in <u>Adkins</u>,

> This stay-of-litigation provision is mandatory. A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview.

<u>Adkins</u>, 303 F.3d at 500 (citing <u>United States v. Bankers Ins. Co.</u>, 245 F.3d 315, 319 (4th Cir. 2001)).

A party can compel arbitration if he or she establishes the following:

3

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

Am. Gen. Life & Acc. Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005) (citation and internal quotation marks omitted).

The undersigned recommends granting Defendants' Motion to Compel Arbitration and Stay Proceedings Pending Conclusion of Arbitration (Dkt. No. 7). Clearly a dispute between the parties exists, as does a written agreement, containing an arbitration provision, which purports to cover the dispute. In addition, the Agreement itself contains the following provision:

> 6. Interstate Commerce. Employee understands and agrees that the Company is engaged in transactions involving interstate commerce and that his or her employment involves such commerce.

(Dkt. No. 7-1 at 3 of 3.) Finally, Defendants assert in their motion that Plaintiff consents to their motion. (See Dkt. No. 7 at 1.)[2] Based on the foregoing, Defendants' motion should be granted.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Defendants' Motion to Compel Arbitration and Stay Proceedings Pending Conclusion of Arbitration (Dkt. No. 7) be GRANTED.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

April 15, 2015
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[2]Plaintiff's deadline to file a Response in Opposition to Defendants' Motion to Compel Arbitration and Stay Proceedings Pending Conclusion of Arbitration was April 2, 2015. (See Dkt. No. 7.) Plaintiff has not filed any document indicating she opposes Defendants' motion.

4

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).